UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-20348-UU

MICHAEL FRIDMAN and
ALEXANDRA PERLMAN,
individually and on behalf of all
others similarly situated,    **CLASS ACTION**

    Plaintiffs,    **JURY TRIAL DEMANDED**

v.

THE COLLECTION LLC,

    Defendant.
_____/

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs Michael Fridman and Alexandra Perlman bring this class action against Defendant The Collection LLC, and allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their counsel.

## NATURE OF THE ACTION

1.    This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), arising from The Collection's knowing and willful violations of the TCPA.

2.    The Collection is one of the nation's pre-eminent retailers of luxury vehicles, including Jaguar, Porsche, Ferrari, Maserati, Audi, Aston Martin, McLaren, or Alfa Romeo branded vehicles, located in Coral Gables.

3.    To boost its profits, The Collection engages in unsolicited telemarketing, with no regard for consumers' privacy rights.

1

4. This case arises from the transmission of telemarketing text messages to Plaintiffs' and other consumers' cellular telephones promoting vehicles sold by The Collection.

5. Through this action, Plaintiffs seek injunctive relief to halt The Collection's illegal conduct which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily lives of thousands of individuals. Plaintiffs also seek statutory damages on behalf of themselves and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiffs allege violations of a federal statute for which there is federal question jurisdiction.

7. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because The Collection is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because The Collection provides and markets its goods within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, The Collection's tortious conduct against Plaintiffs occurred within this district and, on information and belief, The Collection has sent the same text messages complained of by Plaintiffs to other individuals within this judicial district, subjecting The Collection to jurisdiction here.

## PARTIES

8. Plaintiff Michael Fridman is a natural person who, at all times relevant to this action, was a resident of Miami-Dade County, Florida.

9. Plaintiff Alexandra Perlman is a natural person who, at all times relevant to this action, was a resident of Miami-Dade County, Florida.

10. Defendant The Collection LLC is a Florida limited liability company with its

principal place of business located at 200 Bird Road, Coral Gables, FL 33146.  The Collection directs, markets, and provides its business activities throughout the State of Florida.

### THE TCPA

11.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

12.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

13.     The TCPA exists to prevent communications like the ones described within this Complaint.  *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

14.     In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice."  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

15.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

16.     In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers.  *See In the Matter of Rules*

*& Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (F.C.C. 2012) (emphasis supplied).

17. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. at 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71.

18. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

19. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

20. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. at 14098 ¶ 141).

21. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, ¶¶ 139-142 (F.C.C.

2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

22. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. at 14014, ¶ 136.

23. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C.R. 7961, 7991-92 (F.C.C. 2015) (requiring express consent "for non-telemarketing and non-advertising calls").

24. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

25. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## FACTS

26. On December 12, 2017 at 10:49 a.m., The Collection, using an automated text-messaging platform, caused a text message to be transmitted to Plaintiff Fridman's cellular telephone number:



27. Hours later, on December 12, 2017 at 3:46 p.m., The Collection, using an automated text-messaging platform, caused the identical, impersonal text message to be transmitted to Plaintiff Perlman's cellular telephone number.

28. The link contained in the identical text messages sent to Plaintiff Fridman and Plaintiff Perlman is a link to The Collection's Facebook page, which includes posts setting forth the terms of the promotions being marketed by The Collection:



29. The text message constitutes telemarketing because it encouraged the purchase of vehicles pursuant to the promotions identified on The Collection's Facebook page.

30. Plaintiffs received the subject text messages within this judicial district and, therefore, The Collection's violation of the TCPA occurred within this district. Upon information and belief, The Collection caused other text messages to be sent to individuals residing within this judicial district.

31. At no point in time did either Plaintiff provide The Collection with their express written consent to be contacted by text using an ATDS.

32. Plaintiffs are the subscribers and sole users of the cellular telephone numbers at which they received The Collection's text message, and are financially responsible for phone service to those numbers.

33. The impersonal and generic nature of The Collection's text message, the fact that the identical text message was sent to both Plaintiffs hours apart on the same day, and the inclusion of an automated process for a recipient to "opt-out" of future text messages demonstrate that The Collection utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("the generic, impersonal nature of the text message advertisements") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner); *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS).

34. Specifically, upon information and belief, The Collection utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by The Collection have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

35. The Collection's unsolicited text messages caused Plaintiffs actual harm, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. The Collection's text messages also inconvenienced Plaintiffs and caused disruption to their daily life. *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious.").

## CLASS ALLEGATIONS

### PROPOSED CLASS

36. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and all others similarly situated.

37. Plaintiffs bring this case on behalf of a Class defined as follows:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message to their cellular telephone number by The Collection, or anyone on the Collection's behalf, using an automatic telephone dialing system, without emergency purpose and without the recipient's prior express consent.**

38. The Collection and its employees or agents are excluded from the Class. Plaintiffs do not know the number of members in the Class, but believe the Class members number in the several thousands, if not more.

### NUMEROSITY

39. Upon information and belief, The Collection placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

40. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from The Collection's call records.

### COMMON QUESTIONS OF LAW AND FACT

41. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> (1) Whether The Collection made non-emergency calls to Plaintiffs' and Class members' cellular telephones using an ATDS;
>
> (2) Whether The Collection can meet its burden of showing that it obtained prior express written consent to make such calls;
>
> (3) Whether The Collection's conduct was knowing and willful;
>
> (4) Whether The Collection is liable for damages, and the amount of such damages; and
>
> (5) Whether The Collection should be enjoined from such conduct in the future.

42. The common questions in this case are capable of having common answers. If Plaintiffs' claim that The Collection transmitted text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiffs and the Class members will have identical claims capable of

being efficiently adjudicated and administered in this case.

### TYPICALITY

43.     Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

44.     Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class, and have retained competent counsel.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from The Collection's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Additionally, the prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for The Collection.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227(b)**

46.     Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

47.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any

10

automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service ….” 47 U.S.C. § 227(b)(1)(A)(iii).

48.     "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citing FCC, In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

49.     The Collection – or third parties directed by The Collection – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiffs and the other members of the Class.

50.     These calls were made without regard to whether The Collection had first obtained express permission from the called party to make such calls. In fact, The Collection did not have prior express consent to call the cell phones of Plaintiffs and the other members of the putative Class when its calls were made.

51.     The Collection has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiffs and the other members of the putative Class without their prior express consent.

52.     In fact, The Collection knew that it did not have prior express consent to send these text messages..

53.     As a result of The Collection's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiffs and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages, and up to $1,500.00, for each violation. Plaintiffs and the class are also entitled to an injunction against future calls.

**WHEREFORE**, Plaintiffs Michael Fridman and Alexandra Perlman, on behalf of themselves and the other members of the Class, pray for the following relief:

a. A declaration that The Collection's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. A declaration that The Collection's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c. An injunction prohibiting The Collection from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d. An award of actual, statutory damages, and/or trebled statutory damages; and

e. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs and Class members hereby demand a trial by jury.

Dated:  February 23, 2018

                                    Respectfully submitted,

                                    */s/ Avi R. Kaufman*
Avi R. Kaufman
Florida Bar No. 84382
KAUFMAN P.A.
31 Samana Drive
Miami, Florida 33133
Telephone:  (305) 469-5881
Email: kaufman@kaufmanpa.com

Manuel S. Hiraldo
Florida Bar No. 030380
HIRALDO P.A.
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: (954) 400-4713
Email: mhiraldo@hiraldolaw.com

*Counsel for Plaintiffs Michael Fridman and Alexandra Perlman*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 23, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Avi R. Kaufman*